IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARMICHELL BELL,                )
                               )
                Plaintiff,      )  Civil No. 99-327-JE
                               )
        v.                      )  OPINION
                               )  AND ORDER
CLACKAMAS COUNTY, et al,        )
                               )
                Defendants.     )
_____)

        Charles P. Duffy
        Attorney at Law
        2149 N.E. Broadway, Suite 4
        Portland, OR 97232

        Therese Lavellee
        Attorney at Law
        2149 N.E. Broadway, Suite 1
        Portland, OR 97232
                Attorneys for Plaintiff

        David A. Ernst
        John R. Osburn
        Heyke G. Nickerson
        Bullivant Houser Bailey
        300 Pioneer Tower
        888 S.W. Fifth Avenue
        Portland, OR 97204-2089
                Attorneys for Defendants

JELDERKS, Magistrate Judge:

1 - OPINION AND ORDER

Plaintiff, Carmichell Bell, brings this employment action against defendants, Clackamas County, the Clackamas County Sheriff's Office, and several individual defendants[1] employed by the Clackamas County Sheriff's Office, alleging unlawful employment practices and race discrimination, wrongful termination, breach of contract, violation of Oregon's whistle-blowing statute, intentional infliction of emotional distress and defamation. Defendants deny plaintiff's claims and contend that plaintiff was terminated because his performance during his probationary period was unsatisfactory. Defendants move for summary judgment on each of plaintiff's claims. Plaintiff concedes that the court should grant summary judgment against his claims for breach of contract, violation of Oregon's whistle-blowing statute and defamation. With respect to his remaining claims, plaintiff disputes that defendants are entitled to summary judgment. For the reasons discussed below, I grant in part and deny in part defendants' motion for summary judgment.

## FACTUAL BACKGROUND

According to the rules governing summary judgment, the following background/facts and all reasonable inferences are

---

[1]The individual defendants named in the complaint are Deputy Jeff Davis, Deputy Roxanne Cadotte, Sergeant Allen Alderman, Deputy Juli Fitzwater, Deputy Jeff Huva, Deputy Jeff Grahn, Lieutenant Michael Machado, and Chief Deputy Pat Detloff.

presented in the light most favorable to plaintiff, and are accepted as true for this proceeding.

In November 1983, plaintiff joined the U.S. Army and completed numerous courses and certifications. Plaintiff served in the Military Police until he was honorably discharged in April 1993. Plaintiff received numerous Army service awards.

In February 1996, plaintiff accepted a police officer position with the Lake Oswego Police Department (LOPD). During his employment with LOPD, plaintiff completed the State of Oregon Board on Public Safety Standards and Training (BPSST) Basic Police Course, the BPSST Intermediate Certificate, and the LOPD Field Training and Evaluation Program (FTEP). Plaintiff successfully completed his probationary period with LOPD and was placed on regular duty status. Plaintiff received several commendations for his service as a police officer with LOPD.

On December 28, 1997, plaintiff resigned his position with LOPD so that he could begin work on December 29, 1997 with the Clackamas County Sheriff's Office (CCSO) as a probationary deputy sheriff. Plaintiff requested an upward adjustment of his salary in recognition of his prior experience. Captain Grolbert requested the Clackamas County Personal Director to increase plaintiff's salary to compensate him for his "knowledge, experience and previous compensation"

and so that CCSO could "retain this experienced applicant."
Clackamas County approved the pay increase for plaintiff.

After beginning his employment with CCSO, plaintiff
entered FTEP, which is a five-phase field-training program for
police officers adopted by CCSO and is the same program
utilized by LOPD. FTEP is a structured training program with
identifiable performance standards. Daily Observation Reports
(DORs) completed by a field-training officer (FTO) are used to
evaluate a probationary deputy's performance in the program.
The FTO grades a probationary deputy's performance based on
the FTO's observations in the field. The FTO prepares a
detailed written report to substantiate the grades given to a
probationary deputy.

Plaintiff's first FTO was Deputy Kevin Layng. Layng
advanced plaintiff to the next phase of FTEP without incident.

Between March 31 and May 1, 1998, Deputy Jeff Davis
served as plaintiff's FTO. Davis had never served as an FTO
before this time. Davis made numerous derogatory comments to
plaintiff and instructed plaintiff to engage in police
behavior that plaintiff believed constituted racial profiling.
For example, Davis asked plaintiff, "Do you know what a
Russian looks like?" and Davis proceeded to tell plaintiff
what Russians looked like. Davis also told plaintiff that
"Russians are prone to steal cars," and that "Russians will
flee if you try and do a traffic stop." Davis also referred

to Russians as "white trash."  Davis also told plaintiff, "If you see Asian males in Asian vehicles, they are possible gang members and [you] should initiate traffic stops on them." Davis also told plaintiff that he should keep a close eye on Hispanics in vehicles and initiate stops on them because Hispanics are more likely to not have car insurance. According to Davis, plaintiff needed "to start paying more attention to the people in the vehicle and not what the vehicle is doing."  Based on Davis' comments and actions, plaintiff told Davis he believed he was engaging in racial profiling and that he disagreed with that practice.  Plaintiff believed that Davis was critical of plaintiff's position, and Davis told plaintiff that he could not trust him if plaintiff did not make those kinds of traffic stops.

Davis also discussed his interest in "women with big butts" and his curiosity about whether "black males have bigger penises than white males."  Davis also told plaintiff about a black woman he had dated because she had a "big butt." Plaintiff did not engage Davis in these topics because he was concerned that he would anger Davis and that would result in low FTEP scores.

Davis also discussed with plaintiff how, as an FTO, Davis could eliminate probationary deputies who were not "welcome." Davis explained that he had been asked to "eliminate" another probationary deputy who was re-entering FTEP.  According to

Davis, certain FTO's are assigned to probationary deputies who are problems and those FTO's attempt to eliminate the probationary deputies from CCSO. Plaintiff believed that Davis appeared to be proud to have the opportunity to eliminate a problem deputy as his way of proving that he could do what he had to do to succeed at CCSO.

On April 15, 1998, Davis took a knife from a suspect, put it in his patrol car, and failed to properly file it with the property room of CCSO.

Plaintiff was next assigned to Deputy Ken Boell; however, the assignment was switched by plaintiff's training officer, Deputy Juli Fitzwater. Between May 8 and May 11, before a shift briefing, Sergeant Allen Alderman called Boell "Aryan Ken" in plaintiff's presence. At the briefing, plaintiff contends that numerous racial comments were exchanged, including references to "the Klan" and "white sheets." Plaintiff felt powerless and violated by these remarks.

Plaintiff was reassigned to Deputy Roxanne Cadotte, and plaintiff was Cadotte's first trainee. Plaintiff felt that Cadotte was overly critical of his performance and would second-guess his decisions. Cadotte also criticized plaintiff for talking like a black person while speaking to a witness.

On May 18, 1998, a two-hour meeting was held with plaintiff, Sergeant Alderman, who was plaintiff's training sergeant, and Cadotte. Alderman was aware that plaintiff was

encountering some problems during FTEP. Plaintiff was hesitant to discuss his training problems with Alderman. Cadotte left the room, and Alderman told plaintiff, "my stripes are off." At that point, plaintiff told Alderman about Davis' racial profiling. Alderman said he knew about Davis' practice of racial profiling. Plaintiff also told Alderman that Cadotte was overly critical of him and said he spoke to a witness like a "black person." The meeting ended without any resolution.

On May 22, 1998, Fitzwater held a status meeting with all of plaintiff's FTOs and his training sergeants. Those in attendance were Fitzwater, Layng, Alderman, Davis, Cadotte, and Lieutenant Machado, the FTEP liaison. Defendants contend that the meeting was held to discuss plaintiff's FTEP deficiencies and strategies to help plaintiff overcome those deficiencies. The resolution was to give plaintiff an opportunity to improve.

Plaintiff saw the May 22 meeting in progress, and after the meeting, plaintiff contends that Davis glared at him. Plaintiff assumed that Alderman told the group about his complaints regarding Davis' racial profiling and Cadotte's overly critical supervision. On May 22, 1998, Davis received from Cadotte his first "Not Responding to Training" (NRT) score. Every training day after the May 22 meeting, Cadotte gave plaintiff an NRT.

On June 2, 1998, plaintiff was assigned to Deputy Jeff Huva, who also gave plaintiff an NRT every training day until plaintiff was placed on administrative leave. Huva told plaintiff that he was in the U.S. Navy, and that if he could train dolphins, he could train plaintiff. Plaintiff was offended by this remark.

On June 9, 1998, Fitzwater held another status meeting to discuss plaintiff's training status. In attendance at this meeting were Fitzwater, Layng, Davis, Cadotte, Huva, Alderman, Sergeant Waggoner, Machado, and Captain Grolbert. According to defendants, the purpose of the meeting was to discuss plaintiff's performance deficiencies, remedial efforts, and possible actions, including termination, to address plaintiff's performance deficiencies. At the conclusion of the meeting, Captain Grolbert decided to give plaintiff another week to improve his FTEP performance.

On June 10, Fitzwater and Huva met to discuss plaintiff's deficiencies identified by Huva. On June 12, Fitzwater met with plaintiff to place him on administrative leave because "he continued to exhibit performance deficiencies." Plaintiff believes that Captain Grolbert did not know that plaintiff was placed on administrative leave at this time. Plaintiffs' training officers recommended that plaintiff's employment be terminated.

On June 19, 1998, plaintiff filed a racial discrimination complaint with Clackamas County Personnel Division against Davis, Cadotte, Huva, and Fitzwater. On June 29, Clackamas County hired Loper, Coe & Associates to investigate the racial discrimination complaint. Loper, Coe interviewed numerous CCSO officers including plaintiff's training officers.

On June 24, 1998, plaintiff filed an Internal Affairs complaint against Davis regarding the knife Davis took from a suspect and failed to turn into the property room. On July 1, Internal Affairs sustained the complaint and disciplined Davis.

On July 10, 1998, Captain Grolbert recommended that plaintiff be reinstated so that he had every opportunity to succeed. Plaintiff was reinstated with a review to occur eight days after his reinstatement. On July 11, 1998, plaintiff was assigned to Deputy Jeff Grahn. On July 22, Fitzwater held a status meeting with plaintiff, Grolbert and Grahn to discuss plaintiff's performance deficiencies in light of a recent NRT. Fitzwater and Grahn recommended that plaintiff be terminated. Chief Grolbert returned plaintiff to duty, but he warned plaintiff that he could not proceed in FTEP if he received anymore NRTs. On August 1, plaintiff received an NRT.

On August 2, 1998, Machado, Fitzwater and plaintiff met to discuss whether plaintiff should continue in FTEP. Machado

and Fitzwater were living together and have since become married.  Grolbert was on vacation when this meeting occurred. At the end of this 3 ½ hour meeting, Machado placed plaintiff on paid administrative leave pending review by Grolbert.

On August 3, 1998, plaintiff amended his racial discrimination complaint to include Machado and Fitzwater. Subsequently, Grahn, Machado, and Fitzwater recommended that plaintiff's employment be terminated.

Grolbert agreed with the recommendations of FTEP personnel that plaintiff be terminated, and Grolbert recommended that Chief Detloff terminate plaintiff.  Chief Detloff reviewed plaintiff's FTEP file and concluded that CCSO had provided plaintiff with as much training as possible but plaintiff had still failed to perform satisfactorily.  In making his decision, Detloff did not read the Loper, Coe report or plaintiff's racial discrimination complaint. Instead, Detloff relied on a summary prepared by Larry Parks, interim Department of Employee Services director, that concluded that the allegations in the complaint were unsupported and the complaint should be denied. Detloff terminated plaintiff on December 28, 1998.

Plaintiff is African-American.  CCSO has not hired another African-American deputy in its patrol division. Additionally, no other African-American has gone through the FTEP program for field sheriff's deputies at CCSO.

As noted above, plaintiff concedes his breach of contract, whistle-blowing and defamation claims on defendants' motion for summary judgment. Plaintiff's remaining claims allege violations of 42 U.S.C. § 1981, Title VII, 42 U.S.C. § 1983, ORS 659.030, and also allege common-law wrongful termination, and intentional infliction of emotional distress. Defendants move to dismiss the individual defendants and CCSO on the state-law claims and substitute Clackamas County as the sole defendant on those claims. Plaintiff agrees that this motion to substitute is appropriate.

**STANDARDS**

The court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir.), cert. denied, 493 U.S. 809 (1989).

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec.

<u>Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). The court should resolve reasonable doubts about the existence of a material factual issue against the moving party. <u>Id.</u> at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. <u>Id.</u> at 630-31.

**DISCUSSION**

<u>1. Employment Discrimination based on Race - Disparate Treatment</u>

Plaintiff brings claims for employment discrimination based on race under Section 1981, Title VII and ORS 659.030. To survive a motion for summary judgment, plaintiff must establish that he was terminated "under circumstances which give rise to an inference of unlawful discrimination." <u>Texas Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). Plaintiff may establish an inference of unlawful discrimination either through direct evidence of discriminatory intent or through a presumption arising from the four factors set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994). "The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of preponderance of the evidence." <u>Id.</u> The <u>McDonnell Douglas</u> factors are (1) plaintiff is a member of a

protected class; (2) plaintiff was satisfactorily performing
his job; (3) plaintiff was terminated; and (4) plaintiff was
replaced by someone with similar skills and qualifications.
See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

There is no dispute that plaintiff is African-American,
that he was terminated and that CCSO continued to hire
deputies with similar qualifications as plaintiff held.  The
dispute centers around whether plaintiff was performing his
job in a satisfactory manner.  Defendants argue that he was
not performing his job duties satisfactorily and that the
reason CCSO terminated plaintiff was because he was not
performing satisfactorily in the FTEP program.  Plaintiff
contends that he was performing his job satisfactorily, but
that his training officers were giving him false scores so
that he would be terminated from CCSO.  Plaintiff has offered
the testimony of an expert in the area of law enforcement
training that opines that plaintiff's performance in the FTEP
program was satisfactory and that the training officers'
scores were inconsistent and not representative of plaintiff's
performance.  Additionally, plaintiff has offered substantial
evidence that defendants' proffered nondiscriminatory reason
is merely pretext.  He also presents evidence that within a
relatively short period of time, he was subjected to
derogatory remarks about members of his race and other races.
In large part, these derogatory remarks were made by the

individuals who evaluated and graded plaintiff's job performance and who recommended that plaintiff be terminated. These remarks are not necessarily stray remarks. Plaintiff asserts that when he voiced his objection to those remarks, he began to receive more negative scores in the FTEP program. Plaintiff has presented sufficient evidence to withstand defendants' motion for summary judgment on these claims.

2.  Hostile Work Environment

Plaintiff also brings a claim for hostile work environment under Title VII. To succeed on a hostile work environment claim, plaintiff must prove that he was subjected to harassment that was so severe or pervasive that the actions effectively changed plaintiff's working conditions. Burrell v. Star Nursery, Inc., 170 F.3d 951, 954 (9th Cir. 1999). The elements of a prima facie case of hostile work environment include: (1) plaintiff belongs to a protected class; (2) he was subjected to unwelcome conduct; (3) the conduct was based on race; (4) the conduct affected a term, condition or privilege of employment; and (5) plaintiff's employer is responsible for the conduct. See Brooks v. City of San Mateo, 2000 WL 1568680 (9th Cir. Oct. 23, 2000). A hostile work environment exists when there is a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment. See Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1108 (9th Cir.1998); Fuller v. City of Oakland, Cal.,

47 F.3d 1522, 1527 (9th Cir.1995). The working environment must be perceived as both subjectively and objectively abusive. See Fuller, 47 F.3d at 1527. Whether an environment objectively is hostile or abusive can be determined only by looking at all the circumstances. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Fuller, 47 F.3d at 1527.

Plaintiff contends that the individual defendants, which were his training officers and other supervisors, created a hostile work environment through their racial remarks and through their allegedly negative and inaccurate evaluations of his FTEP performance. Plaintiff also contends that Clackamas County is liable because Clackamas County, through CCSO's supervisors, knew that plaintiff felt that defendants were racially biased against him. Plaintiff has presented evidence that he told Sergeant Alderman about Deputy Davis' racial profiling comments and plaintiff's objections to that conduct. Plaintiff also filed a race discrimination complaint against several of his FTOs and training leader. Further, plaintiff has presented evidence of several incidents in a short period of time in which defendants made derogatory racial remarks either to plaintiff or in the presence of plaintiff. In particular, there is evidence that Sergeant Alderman, a supervising officer, made remarks in plaintiff's presence about whether another deputy was a member of the Aryan Nation and whether his Aryan tattoos had been discovered.

In considering all of the evidence concerning this claim, I conclude that plaintiff has presented sufficient evidence to warrant a trial on the issues of hostile environment and respondeat superior. Consequently, defendants' motion for summary judgment on this claim is denied.

3. Retaliation under Section 1981 and Title VII

Plaintiff brings claims for retaliation under Section 1981 and Title VII, alleging that defendants terminated his employment in retaliation to plaintiff's complaints about (1) Davis' racial profiling, (2) Davis' mishandling of evidence, and (3) the racial discrimination he suffered at CCSO. Under Section 1981 and Title VII, a plaintiff must show that (1) he was engaging in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and his termination exists. Brooks, 2000 WL 1568680.

Plaintiff contends that he was terminated because he opposed Davis' racial profiling practices and he opposed derogatory racial remarks. Plaintiff informed Alderman of his opposition to the racial profiling and the derogatory racial remarks just prior to the May 22 meeting between Alderman and plaintiff's FTO and training officer, after which defendants' evaluation of plaintiff's FTEP performance took a turn for the worse and ultimately resulted in his termination. Plaintiff contends that these events occurred close in time and thus

establish a causal connection between his opposition and his termination.  Defendants contend that they terminated plaintiff because of his poor performance and not his opposition activity.  Plaintiff responds that defendants' reasons for terminating him are merely pretext.

Similar to my analysis of plaintiff's employment discrimination claims, I conclude that plaintiff has established a prima facie case of retaliation under Section 1981 and Title VII, and plaintiff has presented sufficient evidence of pretext to defeat defendants' motion for summary judgment.

## 4.  Section 1983 Retaliation for Constitutionally Protected Conduct

Plaintiff also claims that his rights under Section 1983 were violated because he was terminated for exercising his First Amendment rights.  Public employees cannot be forced to relinquish their First Amendment rights simply because they accept the benefit of public employment.  Tucker v. State of Cal. Dept. of Educ., 97 F.3d 1204, 1211 (9th Cir. 1996) (citing Pickering v. Board of Educ., 391 U.S. 563 (1968)).  To establish a claim that a public employer has unlawfully infringed his or her constitutionally protected interest in freedom of speech, the employee must show that the speech in question was constitutionally protected, and was a substantial or motivating reason for an adverse employment action.  Mount

<u>Healthy School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287

(1977).  If the employee meets this burden, the government

employer may avoid liability by establishing that it would

have taken the same action regardless of the protected

conduct.  <u>Id.</u>

Plaintiff contends that he exercised his First Amendment

rights when he complained to CCSO and Clackamas County about

(1) Davis' racial profiling, (2) Davis' mishandling of

evidence, and (3) the racial discrimination he was subject to

during FTEP by his training officers.  Plaintiff contends that

these three matters are of public concern and that he was

terminated for exercising his free speech right to complain

about those matters.  Defendants respond that plaintiff was

not terminated because of his complaints, but rather his poor

job performance.  Defendants also contend that his complaint

regarding the mishandling of evidence did not rise to the

level of public concern and that plaintiff's other complaints

regarding racial profiling and racial discrimination are

suspect because those complaints followed poor evaluations of

his performance.  Defendants also argue that plaintiff has

failed to establish a causal connection between his complaint

filed during his second administrative leave period and his

termination.

Like his other retaliation claims, I conclude that

plaintiff has established a prima facie case of retaliation

under Section 1983, and plaintiff has presented sufficient evidence of pretext to defeat defendants' motion for summary judgment.

5.  Section 1983 - Equal Protection Claim - Discrimination

Plaintiff raises a Section 1983 claim for violation of his equal protection rights based on defendants' alleged race discrimination against him.  Plaintiff may challenge an action committed under color of state law that amounts to deprivation of federal constitutional or statutory rights.  To establish this Section 1983 claim against the individual defendants, plaintiff must show that (1) plaintiff possessed a constitutional right which he was deprived of; (2) the acts or omissions of defendants were intentional; (3) defendants acted under color of law; (4) defendants' acts or omissions caused the constitutional deprivation.  Estate of Macias v. Ihde, 219 F.3d 1018, 1025 (9th Cir. 2000).  Because plaintiff has established a prima facie case under Title VII for race discrimination, plaintiff has also established a prima facie case under Section 1983.  See Sischo-Nownejad v. Merced Cmty Coll. Dist., 934 F.2d 1104, 1113 (9th Cir. 1991).

The individual defendants claim they are entitled to qualified immunity.  In Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), the Supreme Court observed that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would
have known."  The test for qualified immunity is:
(1) identification of the specific right being violated;
(2) determination of whether the right was so clearly
established as to alert a reasonable officer to its
constitutional parameters; and (3) a determination of whether
a reasonable officer could have believed that the policy or
decision in question was lawful.  See Kelley v. Borg, 60 F.3d
664, 666 (9th Cir.1995).  The constitutional right to not be
discriminated against in the employment setting based on race
is clearly established law and a reasonable police officer
would believe that discriminating against plaintiff on the
basis of his race was unlawful.  The individual defendants are
not entitled to qualified immunity.

Plaintiff agrees with defendants that CCSO should be
dismissed under this Section 1983 claim because CCSO is not a
"person" for the purpose of Section 1983 liability.  However,
plaintiff seeks to hold Clackamas County liable because Chief
Deputy Detloff, on behalf of Clackamas County, was the final
decision-maker in plaintiff's termination and because his
actions in deciding to terminate plaintiff were a fair
representation of an official policy of Clackamas County that
inflicted injury on plaintiff.  Plaintiff contends that
Detloff's failure to review the Loper, Coe report and

plaintiff's race discrimination complaint, and Detloff's
failure to confer with the Sheriff before terminating
plaintiff represent an official policy of continuing an equal
protection violation by failing to consider whether race
discrimination affected plaintiff's job performance.

To hold a local government liable for an official's
conduct, a plaintiff must first establish that the official
(1) had final policymaking authority "concerning the action
alleged to have caused the particular constitutional or
statutory violation at issue" and (2) was the policymaker for
the local governing body for the purposes of the particular
act.  See McMillian v. Monroe County, Al., 520 U.S. 781, 785
(1997).  Plaintiff must also show that his injury resulted
from a "permanent and well settled" practice for liability to
attach for injury resulting from a local government custom.
Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th
Cir.1989).  In this case, plaintiff has not established that a
"permanent and well settled" practice exists of terminating an
employee without considering whether a hostile work
environment or other employment discrimination caused the
employee to perform unsatisfactorily.  Consequently,
plaintiff's Section 1983 claim for discrimination as to
defendant Clackamas County fails, and defendants' motion for
summary judgment is granted in part to this claim.  However,

defendants' motion for summary judgment as to the individual
defendants is denied.

6.  Common-Law Wrongful Termination

Plaintiff also brings a claim for common-law wrongful
termination, alleging that he was wrongfully terminated for
complaining about (1) Davis' racial profiling, (2) Davis'
mishandling of evidence, and (3) the racial discrimination
plaintiff suffered at CCSO.  A common-law wrongful discharge
claim is not available in Oregon if (1) an existing remedy
adequately protects the public interest in question, or
(2) the legislature has intentionally abrogated the common-law
remedies by establishing an exclusive remedy.  Draper v.
Astoria Sch. Dist. No. 1C, 995 F. Supp. 1122, 1130-31 (D. Or.
1998).  Therefore, an existing federal remedy may bar a
common-law wrongful discharge claim, but the particular facts
of the case must be examined to determine whether the federal
remedy is adequate.  Id. at 1131.  Where the measure of
damages available under a Section 1983 claim is "more generous
than it would be under a wrongful discharge claim" a plaintiff
cannot pursue a parallel common-law wrongful discharge claim.
Id.

All of plaintiff's allegations under this common-law
wrongful termination claim are raised in his Section 1983
retaliation claim.  Plaintiff offers no explanation why the
remedies available under Section 1983 are not adequate.  After

comparing plaintiff's claim under Section 1983 with his claim
for common-law wrongful termination, and comparing the
available remedies for each claim, I conclude that Section
1983 provides plaintiff an adequate remedy.  <u>See</u> <u>Beyer v.</u>
<u>Baker City</u>, CV 98-724-JE, 2000 WL 284188, at 5-6 (D. Or.
Mar. 8, 2000).  Consequently, I grant defendants' motion for
summary judgment on plaintiff's common-law wrongful
termination claim.

<u>7.  Intentional Infliction of Emotional Distress</u>

Plaintiff brings a claim for intentional infliction of
emotional distress, alleging that defendants' alleged racial
discrimination is an extraordinary transgression beyond the
bounds of socially tolerable conduct.  Plaintiff must
establish that defendants intended to inflict severe emotional
distress, that defendants' acts caused plaintiff to experience
severe emotional distress, and that defendants' acts
constituted an extraordinary transgression of the bounds of
socially tolerable behavior.  <u>See</u> <u>McGanty v. Staudenraus</u>,
321 Or. 532, 543, 901 P.2d 841 (1995).  Although the alleged
racial remarks and other discriminatory conduct are not
appropriate, these actions are not the kind of actions
"outside the bounds of socially tolerable conduct" that
support a claim for intentional infliction of emotional
distress.  Defendants are entitled to summary judgment on

plaintiff's claim for intentional infliction of emotional distress.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED as to plaintiff's claims for common-law wrongful termination (fifth claim for relief), breach of contract (sixth claim for relief), state whistle-blowing under ORS 659.505 (seventh claim for relief), intentional infliction of emotional distress (eighth claim for relief) and common-law defamation (ninth claim for relief). Defendants' motion for summary judgment as to plaintiff's remaining claims under Section 1981, Title VII, Section 1983 and ORS 659.030 (first, second, third and fourth claims for relief) are DENIED. Defendants' motion to dismiss the individual defendants and CCSO on the state law claim under ORS 659.030 is GRANTED. Clackamas County is the sole defendant on that claim.

DATED this 17th day of November, 2000.


/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge